UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BRIAN BROADFIELD**<br>REG. # 18618-026 | : | **DOCKET NO. 2:21-cv-0509**<br>**SECTION P** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **SOKUT MA'AT** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc.1) by pro se petitioner Brian Broadfield. Broadfield is an inmate in the custody of the Bureau of Prisons ("BOP") and is currently incarcerated at the Federal Correctional Institution at Seagoville, Texas ("FCI-Seagoville"). When Petitioner filed this petition, he was incarcerated at the Federal Correctional Complex in Oakdale, Louisiana.[1] His claim arises out of a disciplinary infraction that occurred while he was housed at the Satellite Prison Camp at the Federal Correctional Complex in Terre Haute, Indiana.

This petition has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court. For the reasons stated below, **IT IS RECOMMENDED** that the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2241, venue in a habeas corpus action requires that the petition be brought in the district court in the place where Petitioner is confined. Because Petitioner was confined in Oakdale, Louisiana, when he filed this petition, which is located within the Western District of Louisiana, venue is proper. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495 (1973).

# I.
## BACKGROUND

The facts before this Court, as set forth by the Government, are as follows:

On October 20, 2019, Petitioner applied for a furlough to participate in a Community Service Project, which would take place daily at the Mayor's Office for the city of Terre Haute, Indiana, Monday through Friday, from 8:00 AM to 3:00 PM. The application indicated that he would be transported daily to the authorized location, 17 Harding Ave., Terre Haute, IN 47807, by city employees. Although inmates who participate in Community Service Projects are furloughed from the prison so that they can work in the community during the assigned hours, the inmates are not released from custody. The furlough paperwork clearly states, "I understand that if approved, I am authorized to be only in the area of the destination shown above and at ordinary stopovers or points on a direct route to or from that destination. I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States." Therefore, Petitioner remained in custody and remained subject to BOP rules and regulations. The terms of his furlough further stated, the inmate must not "[l]eave the area of his/her furlough without permission, except for traveling to the furlough destination, and returning to the institution." See Robinson Decl., Att. 1 at 27-28.

On January 21, 2020, Petitioner was on one of these day-furloughs to work on the Community Service Project at the Mayor's Office. At approximately 11:40 AM, a city employee "observed [Petitioner] get into a red hummer type vehicle with a red headed female." She reported this to another city employee, who asked her "to follow the vehicle." "[She] followed them across 1st Street, they pulled farther back into a circle drive and appeared to park the vehicle." She reported this and then waited for BOP staff to respond. *Id*. at 26.

At approximately 12:04 PM, Camp Administrator J. Epplin was contacted by the Community Service Project Supervisor at the Mayor's Office, who told Ms. Epplin that Petitioner had left the authorized area for the Community Service Project and had gotten into a red Hummer SUV with an unknown female. Ms. Epplin and Special Investigative Agent (SIA) J. Baker drove to the area where the Hummer was parked. *Id*. at 17, 25. They approached the vehicle and knocked on the window. The female rolled down the window, and SIA Baker was able to see Petitioner inside, with the seat tilted back and his coveralls undone. He appeared to be adjusting the zipper of his trousers. *Id*. at 25. SIA Baker ordered Petitioner out of the car. Petitioner complied and handed over an eyeglass case, which had two cigarettes in it. *Id*. at 17, 25.

Doc. 25, pp. 7-8.

Broadfield brings this petition seeking expungement of a prison disciplinary proceeding and resulting in a loss of 27 days of good time credit, 60 days non-vested good conduct time, as well loss of commissary, email and fines. Doc. 1, p. 2.

## II.
## LAW & ANALYSIS

### A.  28 U.S.C. § 2241

A 28 U.S.C. § 2241 petition on behalf of a sentenced prisoner "attacks the manner in which a sentence is carried out or the prison authorities' determination of its duration." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). In order to prevail, a § 2241 petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas challenge to a disciplinary proceeding, an inmate must show that the punishment intrudes on a liberty interest protected by the Constitution or some other law. *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293 (1995)). It is assumed that federal prisoners have a liberty interest in their accumulated good conduct time. *See, e.g.*, *Henson v. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Watkins v. Lnu*, 547 Fed. App'x 409, 410 (5th Cir. 2013) (unpublished).

Thus, because a loss of good conduct time is involved in this proceeding, the Supreme Court's analysis in *Wolff v. McDonnell*, 94 S.Ct. 2963 (1974), and *Superintendent, Massachusetts Correctional Institution v. Hill*, 105 S.Ct. 2768 (1985), governs our review. In order for a prison disciplinary proceeding to comport with the requirements of due process, the following minimal procedural safeguards must be afforded: (1) adequate notice of the alleged violation; (2) an opportunity to present evidence; (3) written findings in support of the ruling; and (4) the

requirement that on review, "some evidence" support the ruling. *Hill*, 105 S.Ct. at 2773–74; *Wolff*, 94 S.Ct. at 2978–80.

  **B.** *Application*

  First, the record reveals that petitioner received all due process due under *Wolff*. Petitioner was notified of the charges against him on January 21, 2020, and again on January 22, 2020, in written incident report #3355102. Doc. 1, att. 3, p. 20. *Wolff* requires only that the inmate be afforded written notice of the charged misconduct. This information is found in sections 10-11 of the Incident Report, which Petitioner does not dispute that he received. Doc. 25, att. 2, pp. 17, 18. Based on the foregoing, petitioner received sufficient notice of the charges against him, more than twenty-four hours before the DHO hearing.

  Petitioner was provided a staff representative but waived his right to call witnesses. *Id*. at 22. Petitioner was afforded the opportunity to present evidence in his defense and chose to make the following statement, "I was in the car with my girlfriend and I had the tobacco." *Id*. at 14.

  However, Petitioner complains that sections 23-27 of the incident report were not delivered to his staff representative as required by BOP policy. Doc. 1, pp.16, 19. The applicable policy reads as follows:

> The inmate does not receive a copy of the investigation (Sections 23 through 27 of the incident report). However, if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf.

P.S. 5270.09 at 21, doc. 1, att. 3, p. 7

  The record does not indicate whether this information was provided to the staff representative, or whether the staff representative requested it. However, the Government argues, and the Court agrees, that even if this information was not provided to the staff representative, Petitioner has not established that this materially affected his case in any way. The alleged failure

-4-

to provide these sections to Petitioner's representative in no way deprived him of any evidence that he might have submitted in his defense. Instead, these sections indicate only that Petitioner was informed of his rights, that he failed to make a comment or to request any witnesses, and that the Lieutenant found sufficient basis to proceed with the disciplinary process. Doc. 25, att. 2, pp. 19-20. Also referenced were an email, a chain of custody form, and a photograph, all of which were included in the DHO packet, and all of which support a finding of guilt. *Id*. at 26, 29-31. Because no exculpatory evidence was withheld, Petitioner cannot establish that he was denied the opportunity to present evidence in his defense, or that he was denied due process. Petitioner was provided a written statement of the DHO's findings on April 24, 2020. *Id*. at p. 12. On May 4, 2020, he filed a Regional Administrative Remedy Appeal. Upon review of his appeal and supporting documentation, which made note of administrative errors, the DHO report was amended and provided to petitioner on or about May 19, 2020. Doc. 1, att. 3, p. 32. The Court agrees with the Government's position that petitioner's due process rights were not impacted by any amendments to the report[2].

Therefore, the only determination left is whether there was "some evidence" presented upon which a reasonable, impartial adjudicator could rely to find that petitioner committed the prohibited act of Being in an Unauthorized Area with a Person of the Opposite Sex without Staff Permission and Possession of Tobacco. In order to withstand review, the DHO's decision need only be supported by some evidence upon which a reasonable impartial adjudicator could rely to

---

[2] Petitioner alleges he was not evaluated under 28 C.F.R. § 541.6 prior to the commencement of the disciplinary hearing. Rec. Doc.1 at 14,18. However, he makes no allegation that he "appear[ed] mentally ill at any stage of the discipline process" so as to trigger an evaluation under the regulation. See 28 C.F.R. § 541.6. Even if he had made such an allegation, there simply is no recognized constitutional due process right to have a mental competency and responsibility examination before a prison disciplinary hearing commences. *Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.") Finally, contrary to Petitioner's allegation, the record clearly demonstrates that Petitioner was evaluated by a mental health professional and found to be both competent and responsible for his behavior. Doc. 25, att. 2, p. 23.

find Petitioner guilty. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). All that is necessary to uphold a prison disciplinary finding is "some evidence from which the conclusion of the administrative tribunal could be deduced." *Id*. at 455. "[E]xamination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence" is not required. *Id*. The court need only determine if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56.

The DHO report outlines the evidence relied upon by the DHO and the reasons for reaching this decision. Doc. 1, att. 3, pp. 32-34. Specifically, the Incident Report stated that on January 21, 2020, at approximately 12:04 p.m., Camp Administrator J. Epplin was notified by the Community Service Project Supervisor for the Terre Haute, Indiana Mayor's Office, that inmate Broadfield had left the authorized area for the Community Service Project and gotten in a red Hummer SUV with an unknown female. *Id*. at p. 34. Upon being instructed to step out the vehicle and submit to a search, Broadfield was found to be in possession of two homemade cigarettes. *Id*.

The DHO noted that Broadfield had not made a defense to the charge or a statement during the investigation process and UDC hearing, and an adverse inference was drawn from his decision to remain silent. *Id*. He made one statement to the DHO, "I was in the car with my girlfriend and I had the tobacco." *Id*.

Petitioner was found to have violated Codes 221 and 331. Prohibited Act 221 is defined as "Being in an unauthorized area with a person of the opposite sex without staff permission." Contrary to Petitioner's argument, the regulation does not require that an inmate commit a sexual act in order to be found guilty (see doc. 1, pp. 9, 17), nor does code 221 contain a requirement that the person of the opposite sex be a visitor or a volunteer at the prison, nor that the charged behavior

interfere with the orderly running of the institution. It is enough that Petitioner was alone in an area that had not been authorized, with a person of the opposite sex, without staff permission.

Prohibited Act 331 is defined as: "Possession… of… other non-hazardous contraband… (other non-hazardous contraband includes… smoking apparatus and tobacco in any form where prohibited…)." See 28 C.F.R. Part 541, Table; see also Program Statement 5270.09, Inmate Discipline Program at 52. The Bureau of Prisons has stressed that "Possession of smoking apparatus and tobacco in any form is prohibited for inmates, unless as part of an authorized inmate religious activity." 28 C.F.R. § 551.163. "Inmate possession or use of smoke or smokeless tobacco products is subject to disciplinary action." Program Statement 1640.05, Smoking/No Smoking Areas at 3. This prohibition is absolute and does not require a finding that the inmate was inside a Bureau facility, as opposed to on a work crew in the community, when the infraction occurred.[3]

Accordingly, it cannot be said there was no evidence to support the DHO's findings; rather, the evidence is sufficient to sustain a disciplinary conviction. Therefore, petitioner fails to show a right to federal habeas relief.

### III.
#### CONCLUSION

For the reasons stated above, Broadfield's petition fails to state a claim for relief under 28 U.S.C. § 2241. Accordingly, **IT IS RECOMMENDED** that the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that all pending motions are **DENIED** as **MOOT.**

---

[3] Petitioner argues that his behavior occurred outside of the prison. As remarked above, although on furlough, he is still in BOP custody. See *Dalke v. Terris*, Case No. 16-cv-11165, 2017 WL 131571, at * 1 (E. D. Mich. April 10, 2017) (D. Mich. April 10, 2017) (denying § 2241 filed by Petitioner sanctioned for an incident in which bottles of alcohol and other contraband including tobacco were found in a truck that inmate drove during a work furlough); Sinanan v. Cross, Civil No. 06-3807, 2007 WL 542147, at *1 (D. Minn. Feb. 16, 2007) (denying § 2241 motion of Petitioner found guilty of and sanctioned for Code 221 because he met a female friend in car while he was "assigned to an outside work detail while imprisoned at FPC-Duluth")

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 9th day of December, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE